Bobby Ray GILL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20773.

United States Court of Appeals
Fifth Circuit.

Jan. 2, 1964.

Bobby Ray Gill, pro se.

William A. Kimbrough, Jr., Asst. U. S. Atty., Mobile, Ala., Vernol R. Jansen, Jr., U. S. Atty., for appellee.

Before RIVES, JONES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Bobby Ray Gill was charged by indictment with armed robbery of a bank in Sweet Water, Alabama, in violation of section 2113, Title 18, United States Code. He pleaded not guilty and was represented on his trial in the district court by Honorable M. A. Marsal, an able criminal trial attorney. The jury returned a verdict of guilty, and upon the judgment of conviction Gill was sentenced to the custody of the Attorney General for a period of twenty (20) years. The judgment was affirmed by this Court on January 5, 1961. Gill v. United States, 5 Cir., 285 F.2d 711. Thereafter, Gill filed in the district court an application for habeas corpus, which the court treated as a section 2255 motion. In that first application, Gill attacked the indictment as fatally defective and alleged that the court knowingly allowed the introduction of unsworn testimony. The district court denied that application on November 28, 1962. Gill's motion to appeal in forma pauperis was denied by this Court on January 31, 1963, and his application for rehearing was denied February 22, 1963.

On March 4, 1963, Gill filed a second motion under 28 U.S.C.A. § 2255. In that motion he alleged that in October 1955, while serving with the United States Army in Munich, Germany, he was injured by a rocket shell and sustained permanent head injuries which frequently leave his mind blank for hours at a time; that he suffers from blackout spells; that his head injury so deranged and perverted his mind that he cannot adhere to right nor refrain from doing wrong; that less than one year after his injury he was arrested for the theft of a military pay roll and was confined in the United States Army Disciplinary Barracks at Lompoc, California, where he was told by Army psychiatrists that he was a schizophrenic with "disassociative reaction"; that he was discharged from the Army in December 1957 but apparently again re-enlisted and "was told the same thing by another Army psychiatrist wile (sic) a member of Company A,

3rd Training Regiment, Fort Jackson, S. C., 1959"; that,

"Petitioner was arrested in Texas for bank robbery in Alabama, *petitioner mental condition was worsen by State and Federal official, wile trying to attain an statement from petitioner, official would place a book on top of petitioner head and pound on the book with a blackjack, this was dose to petitioner many times wile trying to attain a statement in an 24 hour period before he was brought before the United States Commissioner.*

"*Due to the explosin and the pounding on the head, petitioner was so deranged he could not legally be tried, the penitentiary record will show petitioner is Neurologists and suffers from blackout spells.*"

The district court observed that,

"At no time, either before, during, or after the trial, did the Petitioner ever indicate that he had been physically abused by law enforcement officials; nor did he ever make any statements or indications that would lead the Court to believe he was mentally incompetent until the filing of the instant petition, which is his second motion to vacate sentence."

Upon receipt of Gill's motion, the district court requested that a psychiatric examination be made of Gill in order to assist the court in deciding whether there was any substance or validity to his claim of mental incompetency. The report signed by the Chief Psychiatrist & Chief Medical Officer of the United States Penitentiary at Leavenworth, Kansas, concludes:

"There is no indication in the current examination or in his history that Gill was mentally incompetent to stand trial at the time of his trial.

"He fully understands the nature of the crime for which he was charged and the circumstances surrounding his trial and conviction. There is no indication that there was any inability to cooperate with his attorney in his own defense. He is not

satisfied with his sentence or his being judged guilty. His contention is that he was not involved in the Robbery. He acknowledges that he had a stolen car and had repairs made on this car eight days prior to the Bank Robbery but contends that there was no evidence that actually showed that he was connected with the Robbery beyond this. These facts are mentioned to indicate his degree of comprehension of the circumstances. His present reaction seems to be grasping at straws hoping that in some manner, due to his speech impediment and an associated claim of experiencing 'some nervousness' that he might be able to get his sentence set aside on the grounds of incompetency.

"DIAGNOSTIC IMPRESSION: (1) Sociopathic Personality, Antisocial Reaction.
(2) Speech Impediment.

"RECOMMENDATIONS: No significant psychiatric condition is currently evidenced other than his basic character disorder. Further there is no indication of any mental incompetency in connection with his trial or mentally irresponsibility in connection with the offense for which he was charged and sentenced."

After receiving that report, the district court, upon a full opinion, denied Gill's motion to vacate his sentence. From that judgment this appeal is prosecuted.

In a brief *pro se*, which would do credit to any attorney practicing criminal law, Gill insists that "the motions, records and files do not conclusively show that appellant is entitled to no relief," and supports that contention by reference to more than thirty pertinent decisions.

Since the per curiam decision in Bishop v. United States, 1956, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835, the lower federal courts have been called on in hundreds of cases to grant hearings to inquire into the mental condition of prisoners at the time of trial. Many of the cases from this and other circuits are collected in a footnote to Nelms v. United States, 4 Cir. 1963, 318 F.2d 150, 153, n. 2. No useful purpose would be served by review of those cases. In Machibroda v. United States, 1962, 368 U.S. 487, 495, 496, 82 S.Ct. 510, 514, 7 L.Ed.2d 473, the Supreme Court, referring to section 2255, observed that,

"The language of the statute does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner. Whether the petition in the present case can appropriately be disposed of without the presence of the petitioner at the hearing is a question to be resolved in the further proceedings in the District Court.

"There will always be marginal cases, and this case is not far from the line. But the specific and detailed factual assertions of the petitioner, while improbable, cannot at this juncture be said to be incredible."

It seems to us that, exercising its common sense, the district court properly held that the averments of mental incompetency in the present case were so incredible as to be frivolous. The judgment is therefore

Affirmed.